Harris S. Freier, Esq. (I.D. #013412006)
Latiqua M. Liles, Esq. (I.D. #252332018)
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, NJ 07960
(973) 656-1600
harris.freier@ogletreedeakins.com
latiqua.liles@ogletreedeakins.com
*Attorneys for Plaintiff*
*Janssen Global Services, LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JANSSEN GLOBAL SERVICES, LLC | : |
| | :     CASE NO.: |
|       Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CYNTHIA NWACHUKWU. | : |
| | : |
|       Defendant. | : |
| | : |
| | : |
| | : |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Janssen Global Services, LLC ("Plaintiff" or "JGS"), by way of Complaint for Injunctive and Other Relief against Defendant Cynthia Nwachukwu ("Defendant"), alleges as follows:

## INTRODUCTION

1.    This action arises from Defendant Nwachukwu's egregious violations of her legal and contractual obligations to JGS.

2.    In the months preceding her voluntary resignation, Defendant Nwachukwu misappropriated a substantial volume of JGS's highly confidential, trade secret, and proprietary

information by secretly and maliciously downloading over 7,000 files to her personal computing device.

3.      Following her resignation, Defendant Nwachukwu founded and now operates Cynthera Precision Intelligence™, a biotechnical research company that competes, or is positioned to compete, with JGS. Her possession of JGS's confidential, trade secret, and proprietary information creates an immediate and substantial risk that it will be used or disclosed, causing irreparable competitive harm to JGS.

4.      Further, upon information and belief, Defendant Nwachukwu is currently employed by Summit Therapeutics Inc., a direct competitor of JGS, further exacerbating the risk of actual or threatened misappropriation, and presenting immediate and substantial threat of irreparable harm to JGS.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as this action arises between parties who are citizens of different states, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.      This Court also has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as JGS asserts claims arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2710 *et seq.* The trade secrets at issue relate to JGS's products and services that are developed, marketed, and used in interstate and foreign commerce.

7.      This Court has supplemental jurisdiction over JGS's state law claims pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts, and form part of the same case or controversy as JGS's federal law claims.

8.      This Court has personal jurisdiction over Defendant Nwachukwu, and venue is proper in this District because Defendant Nwachukwu expressly consented to exclusive jurisdiction of, and venue in, the District of New Jersey pursuant to the Employee Secrecy, Intellectual Property and Non-Solicitation Agreement (the "Secrecy Agreement"), which provides, in relevant part:

> This AGREEMENT will be governed by and interpreted according to the laws of the State of New Jersey, without regard to its conflict of law rules. Any action relating to or arising out of this AGREEMENT may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey. You consent to personal jurisdiction and venue in both such courts and to service of process by United States mail or express courier service in any such action.

**Exhibit ("Ex.") A** ¶ 4.2. The claims asserted herein arise directly out of and relate to that Agreement and Defendant Nwachukwu's misappropriation and retention of JGS's confidential, trade secret, and proprietary information.

## **PARTIES**

9.      Plaintiff Janssen Global Services, LLC is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in Raritan, New Jersey. JGS's sole member is Janssen Pharmaceuticals, Inc., a Pennsylvania corporation with its principal place of business in New Jersey, which is in turn, a wholly owned subsidiary of Johnson & Johnson. Accordingly, JGS is a citizen of New Jersey for purposes of 28 U.S.C. § 1332.

10.     Defendant Nwachukwu is an individual and a resident of the State of Florida, with a residence located at 935 Ariana Street, Lakeland, Florida 33803. Accordingly, Defendant Nwachukwu is a citizen of the State of Florida for purposes of 28 U.S.C. § 1332.

3

## FACTS COMMON TO ALL COUNTS

### I.  JGS's Business Relies on Highly Confidential, Trade Secret and Proprietary Information

11.    Johnson & Johnson is a holding company, with operating companies, including JGS, that are engaged in research, development, manufacture, and sale of a broad range of healthcare products. Johnson & Johnson operates two primary business sectors: one focused on innovative medicines and another sector focused on medical technology ("MedTech"). Johnson and Johnson's Innovative Medicines sector, in which JGS operates, focuses on the following therapeutic areas including: Immunology (e.g., rheumatoid arthritis, psoriatic arthritis, inflammatory bowel disease, and psoriasis), Neuroscience (e.g., mood disorders, neurodegenerative disorders, and schizophrenia), Oncology (e.g., prostate cancer, hematologic malignancies, lung cancer, and bladder cancer).

12.    JGS's medicines are distributed directly to retailers, wholesalers, distributors, hospitals, and healthcare professionals for prescription use.

13.    JGS faces substantial competition in all of its geographic markets. Its business competes with companies of all sizes on the basis of cost effectiveness, technological innovation, intellectual property, product performance, real or perceived product advantages, pricing and availability, and rate of reimbursement. The competitive environment requires substantial investments in ongoing research and development.

14.    Given the intense competition in the industry, protection of JGS's confidential, proprietary, and trade secret information is critical to safeguarding its investment products, competitive commercial strategies, and to prevent competitors or potential competitors from obtaining an unfair competitive advantage.

15.     JGS's success in the industry depends in large part on its confidential, trade secret, and proprietary information, regarding, among other things, its proprietary products, research and development techniques, strategic business plans, operational procedures, and marketing and sales strategies.

16.     JGS safeguards it confidential, trade secret, and proprietary information by, among other things, requiring employees, as a condition of employment, to agree not to disclose its confidential, trade secret, and proprietary information and to return all such information upon termination of employment.

17.     In exchange for executing these agreements, JGS provides employees with access to its valuable confidential, trade secret, and proprietary information on a need-to-know basis, as well as specialized internal training across the JGS portfolio, including product and process knowledge.

18.     JGS also protects its confidential, trade secret, and proprietary information through physical security, including storing materials in physically secure buildings with security personnel, sign-in requirements for employees and visitors, and access controls requiring employees to have functioning key cards, issued and authorized by JGS, to gain access to JGS's offices.

19.     In addition to physical security measures, JGS also protects its confidential, trade secret, and proprietary information stored electronically by requiring users to have company-issued logins and passwords to access JGS's systems. Immediately upon accessing JGS's systems, employees are reminded that they are accessing JGS's confidential, trade secret, and proprietary information, and of their obligations to maintain confidentiality. JGS's internal communications

and documents are further labeled with legends indicating proprietary and confidential status (*e.g.*, "Proprietary and Confidential – for internal use only").

20.     JGS further has policies in place that prevent employees from storing confidential, trade secret, and proprietary information on personal computing devices except in locations that are automatically replicated and maintained in a secure environment approved by Johnson & Johnson Technology (JJT), such as OneDrive, in order to protect the security and confidentiality of its information.

21.     In addition to the above measures, JGS maintains programs designed to detect theft or exfiltration of its confidential, trade secret, and proprietary information, including monitoring, auditing, and forensic capabilities. These programs are regularly updated and enforced to ensure that access and use of sensitive information are consistent with JGS policies and legal requirements.

22.     JGS has invested significant time, money, and resources to generate, develop, and maintain its confidential, trade secret, and proprietary information.

**II.     Defendant Nwachukwu's Contractual Obligations to JGS**

23.     In or around November 2021, JGS offered Defendant Nwachukwu the position of Associate Director, Global Medical Affairs Execution. The offer was expressly contingent upon her execution of the Company's US Secrecy Agreement:

> US Secrecy Agreement. Prior to your commencement of employment with the Company, you must sign and return the Company's US Secrecy Agreement. Please be aware that, in addition to requiring you to sign the Agreement, we expect you to retain in confidence and not disclose or use in your employment with us any confidential information you have obtained from your present or previous employer(s). Please return the signed Agreement with your signed offer letter.

**Ex. A**, p. 2.

24.     As a condition of her employment and as a prerequisite to accessing JGS's confidential, trade secret, and proprietary information, on November 2, 2021, Defendant

6

Nwachukwu executed an Employee Secrecy, Intellectual Property and Non-Solicitation Agreement (the "Secrecy Agreement").

25.    In her role as Associate Director, Global Medical Affairs Execution, Defendant Nwachukwu was responsible for supporting the strategic and operational objectives of JGS's Global Medical Affairs function in oncology, with a designated focus on the lung cancer therapeutic area. In that capacity, Defendant Nwachukwu was entrusted with access to highly sensitive commercial, clinical and strategic information belonging to JGS and the entities within the Johnson & Johnson family of companies.

26.    In the Secrecy Agreement, Defendant Nwachukwu expressly acknowledged that, "[her] role involves a position of trust and confidence in which [she] will have access to confidential, proprietary, and secret information, the disclosure of which would cause the COMPANY to suffer substantial and irreparable harm." **Ex. A**, p. 4.

27.    The Secrecy Agreement was designed to protect JGS's confidential, trade secret, and proprietary information, among other legitimate protectable business interests.

28.    The Secrecy Agreement defines "CONFIDENTIAL INFORMATION" broadly to include:

> [I]nformation or a compilation of information, in any form (tangible or intangible) about the business of the COMPANY, not generally known to the trade or industry in which the COMPANY is engaged, which is disclosed to you, made available to you, or known by you as a result of your employment with any COMPANY, including, but not limited to, the following information: product development, product performance, product knowhow, product specifications, techniques, drawings, prints, designs, and tolerances; regulatory strategies, clinical trials and investigations; manufacturing, engineering, logistics, and quality systems and related processes, data and techniques; information systems, computer programs, software, and hardware configurations; business, financial, operating, sales and marketing plans and strategies; inventions, ideas, discoveries, improvements, innovations and intellectual property strategies; pricing and pricing strategies, forecasts, contract and bidding details, financial data, models and analyses, sales volume, sales data and analyses; customer, business partner and vendor

relationships and arrangements; personnel data and compensation; human resources strategies and goals, recruitment methods and plans, training methods and procedures.

*Id.* ¶ 2.1.

29.     Pursuant to the Secrecy Agreement, Defendant Nwachukwu agreed, in pertinent part:

> Both during and after your employment ends, you agree that, except as required in the course of your job responsibilities, you will not use or disclose any CONFIDENTIAL INFORMATION, or provide any third party with access to any CONFIDENTIAL INFORMATION, unless either specifically authorized in writing by the COMPANY to which the CONFIDENTIAL INFORMATION relates or as permitted by law where the disclosure is made (a) in confidence to a government official or to an attorney, either directly or indirectly, solely for the purpose of reporting or investigating a suspected violation of law; (b) in a complaint or other document filed in a lawsuit or other proceeding, so long as any such filing is made under seal; or (c) in a lawsuit or proceeding against an employer for retaliation based on the reporting of a suspected violation of law and/or to an attorney in any such lawsuit so long as any document containing the information is filed under seal and the information is not otherwise disclosed, except pursuant to court order.

*Id.* ¶ 2.3.

30.     Defendant Nwachukwu further promised that:

> Upon termination of your employment within the COMPANY (whether voluntary or involuntary), you agree to return all property in your possession or custody belonging to any COMPANY, including any CONFIDENTIAL INFORMATION, any COMPANY product, and any computer, phone, or other electronic device or equipment issued to you or paid for by any COMPANY during your employment. You shall not make or retain copies of any CONFIDENTIAL INFORMATION or any correspondence, memoranda, reports, notebooks, drawings, photographs, purchasing or invoicing records, or other documents relating in any way to the business of any COMPANY (in any form whatsoever, including information contained in computer memory or stored on any electronic storage device, including computer drives other electronic devices, or cloud-based storage), that were entrusted to, created by, available to or obtained by you at any time during your employment within the COMPANY unless expressly authorized in writing.

*Id.* at ¶ 2.4.

31. Immediately above Defendant Nwachukwu's signature, the Secrecy Agreement states in conspicuous, capitalized text:

YOU ACKNOWLEDGE HAVING READ, EXECUTED AND RECEIVED A COPY OF THIS AGREEMENT, AND YOU AGREE TO THE TERMS ABOVE AND ACKNOWLEDGE THAT YOU INTEND TO BE LEGALLY BOUND BY THIS AGREEMENT.

*Id*.

32. Defendant Nwachukwu executed the Secrecy Agreement on November 2, 2021.

33. Defendant Nwachukwu thereafter commenced employment with JGS and remained employed until her voluntary resignation on November 1, 2025.

### III. Defendant Nwachukwu's Access to and Misappropriation of JGS's Confidential, Trade Secret, and Proprietary Information, and Competitive Risk

34. Throughout her employment, JGS entrusted Defendant Nwachukwu with access to certain types of confidential, trade secret, and proprietary information, belonging to JGS and the entities within the Johnson & Johnson Family of Companies (collectively referred to herein as "JGS Confidential Information").

35. JGS maintains an Information Security Risk Management ("ISRM") team responsible for monitoring, investigating, and protecting JGS Confidential Information from unauthorized access, use, or disclosure.

36. The ISRM team monitors activity on JGS's systems to detect unusual or unauthorized downloads, transfers, or other handling of JGS Confidential Information, and maintains logs and audit trails that enable identification and investigation of potential exfiltration.

37. Beginning in or around 2023, Defendant Nwachukwu experienced significant performance deficiencies, resulting in multiple performance-related discussions between her and her manager.

38. On May 8, 2025, Defendant Nwachukwu received negative performance feedback from team members and stakeholders with whom she worked. Thereafter, on July 17, 2025, Defendant Nwachukwu was placed on a formal performance improvement plan.

39. On or about October 1, 2025, Defendant Nwachukwu commenced a leave of absence and, during that period, was not authorized to perform work or access JGS's internal systems.

40. On or about November 1, 2025, prior to returning from leave, Defendant Nwachukwu notified JGS that she was resigning from her employment, effective immediately.

41. Following Defendant Nwachukwu's resignation, the ISRM team conducted a forensic review of her system activity.

42. The forensic review revealed that, beginning on May 18, 2025 – shortly after receiving negative performance feedback on May 8, 2025 – Defendant Nwachukwu began downloading large volumes of JGS documents to her personal computing device. In total, Defendant Nwachukwu downloaded over 7,000 documents.

43. Notably, over 1,200 of these documents were downloaded after the start of Defendant Nwachukwu's leave of absence, including more than 500 during her leave and over 700 after she tendered her voluntary resignation, as follows:

    a. On October 8, 2025, Defendant Nwachukwu downloaded approximately 43 documents to her personal computing device.

    b. On October 9, 2025, Defendant Nwachukwu downloaded approximately 36 documents to her personal computing device.

    c. On October 12, 2025, Defendant Nwachukwu downloaded approximately 456 documents to her personal computing device.

10

d. On November 1, 2025, at 2:05 a.m., Defendant Nwachukwu submitted her voluntary resignation via email.

e. Later that same day, between 4:47 a.m. and 5:51 a.m., Defendant Nwachukwu downloaded approximately 530 documents to her personal computing device.

f. On November 2, 2025, between 9:06 p.m. and 9:23 p.m., Defendant Nwachukwu downloaded an additional 207 documents to her personal computing device.

44. The downloaded documents include, among other highly sensitive documents:

a. **Annual Gap Assessments and Strategic Planning Documents for Brands/Assets:** Internal strategic reviews evaluating prior gaps, current performance and future opportunities for Company brands or assets, including clinical and real-world evidence needs, funding priorities, and strategic initiatives to support brand growth and positioning. Notably, certain of these documents predate Defendant Nwachukwu's hire by more than ten years.

b. **Strategic/Internal Documents:** Proprietary materials created for internal use to support brand strategy, employee education, physician engagement, or decision-making, including FAQs, roundtable decks, and analysis of clinical or market data.

c. **Clinical Guidance Documents:** Proprietary internal documents that provide standardized instructions, protocols, or treatment guidance to healthcare professionals to support clinical trials, evidence generation, and brand strategy.

d. **Proprietary Clinical/Research Studies:** Confidential internal documents summarizing clinical trial results, study analyses, or research data used to inform strategic planning, evidence generation, and brand decision-making.

45. Notably, although Defendant Nwachukwu's role focused on Medical Affairs strategy in Lung, the forensic review revealed that she downloaded not only Lung-related documents, but also highly confidential documents relating to certain of the JGS's neuroscience and immunology products, which are far afield from the oncology lung cancer assets that were Defendant Nwachukwu's area of responsibility. The breadth of these downloads demonstrates that Defendant Nwachukwu's conduct was not limited to legitimate business needs and supports the inference of intentional misappropriation.

11

46.    Further, many of the documents downloaded by Defendant Nwachukwu constitute Johnson & Johnson Intellectual Property (J&J IP"), as they contain company-owned, legally protected scientific, clinical, operational, or strategic information that provides JGS with competitive advantage and is strictly restricted from external dissemination.

47.    The use or disclosure of this information by Defendant Nwachukwu would irreparably disadvantage and harm JGS.

48.    The forensic review further revealed that Defendant Nwachukwu took affirmative steps to conceal her transmission of JGS Confidential Information to her personal computing device. On multiple occasions, Defendant Nwachukwu deleted documents from her personal account and immediately emptied the recycle bin in an apparent effort to obscure evidence of her unauthorized downloads and impede detection.

49.    The volume, timing, and manner of these downloads, combined with Defendant Nwachukwu's concealment and deletion efforts were inconsistent with any legitimate business purpose and constitute unauthorized retention and misappropriation of JGS Confidential Information.

50.    These materials constitute protectable trade secrets and proprietary assets, and Defendant Nwachukwu's unauthorized use, retention, or potential dissemination of these materials creates a significant and imminent risk of harm to JGS.

51.    After her resignation, JGS discovered that Defendant Nwachukwu updated her public LinkedIn profile to list Cynthera Precision Intelligence™ as her current employer. **Ex. B**.

52.    Publicly available information indicates that Cynthera Precision Intelligence™ is a biotechnical research company founded and owned by Defendant Nwachukwu in 2025. **Ex. C**.

12

53.    JGS operates in the same therapeutic and research spaces as Cynthera Precision Intelligence™ and making the company a potential direct competitor.

54.    Further, upon information and belief, Defendant Nwachukwu is currently employed by Summit Therapeutics Inc., a biopharmaceutical oncology company that develops and commercializes medicines in the same therapeutic areas as JGS and therefore directly competes with JGS in the marketplace.

55.    Defendant Nwachukwu's continued possession of JGS Confidential Information therefore creates an imminent and substantial risk of misuse, providing her, Cynthera Precision Intelligence™ and Summit Therapeutics Inc. with an unfair competitive advantage.

### IV.    JGS's Notice to Defendant Nwachukwu of the Breach

56.    Upon discovering Defendant Nwachukwu's misappropriation of JGS Confidential Information, on November 25, 2025, JGS's Employee Relations Team sent a letter to Defendant Nwachukwu placing her on notice that she may have improperly accessed, downloaded, or transferred proprietary and confidential documents. This letter informed Defendant Nwachukwu that, if true, such conduct violated JGS policy, applicable agreements, and the law, and that JGS was undertaking a review and investigation for which her cooperation would be required. The letter also advised that JGS would follow up to schedule an interview. **Ex. D**.

57.    On the same day, Defendant Nwachukwu acknowledged receipt of the letter, provided her contact information, and indicated that she was "committed to cooperating with the Company's review and will await further instructions regarding next steps, including any interviews and remediation processes." **Ex. E**.

58.    On December 1, 2025, Defendant Nwachukwu informed JGS that she had retained counsel and provided contact information for her attorneys. **Ex. E**.

13

59.     On December 11, 2025, the ISRM team emailed Defendant Nwachukwu and her counsel requesting a Microsoft Teams call, which is standard procedure to ensure JGS Confidential Information is properly secured and remediated. **Ex. E**.

60.     When no response was received from either Defendant Nwachukwu or her counsel, JGS engaged the undersigned counsel to assist in securing Defendant Nwachukwu's cooperation. By letter dated December 18, 2025, the undersigned advised Defendant Nwachukwu's counsel of the misappropriation and her potential competitive business activities and requested that Defendant Nwachukwu participate in the interview and supervised remediation process. The undersigned asked that counsel provide Defendant Nwachukwu's availability for an interview on or before December 23, 2025. **Ex. F**.

61.     After requesting an extension to respond, Defendant Nwachukwu's counsel responded on December 29, 2025, denying any misconduct by Defendant Nwachukwu, and asserting that her downloading of JGS documents may have been necessitated by her use of her personal laptop when her JGS-issued device was allegedly "impaired." **Ex. G**.

62.     The ISRM team immediately conducted an internal review, including Defendant Nwachukwu's device activity, technical support service tickets, and communications with her supervisor, to determine whether she had reported any computer issues. The ISRM team found no evidence that Defendant Nwachukwu's system was impaired or otherwise malfunctioning.

63.     This false and misleading claim was made to justify Defendant Nwachukwu's unauthorized downloads and to conceal her misappropriation of JGS Confidential Information, thereby obstructing JGS's investigation.

64. On January 15, 2026, the undersigned again requested that Defendant Nwachukwu participate in an ISRM interview and supervised remediation process, and certify to the disposition of JGS's Confidential Information, with a requested response date of January 22, 2026. **Ex. H**.

65. On January 29, 2026, during a Microsoft Teams meeting between counsel, Defendant Nwachukwu's counsel expressed that he would not permit Defendant Nwachukwu to participate in the ISRM interview and indicated that she had allegedly sold the subject computing device to which JGS Confidential Information had been downloaded, meaning she was no longer in possession of the device.

66. Defendant Nwachukwu's denials are not credible in light of JGS's forensic review and internal investigation.

67. In a final effort to secure Defendant Nwachukwu's compliance with the ISRM interview and supervised remediation process, on February 27, 2026, the undersigned sent a final letter to Defendant Nwachukwu's counsel advising that JGS would file a lawsuit should Defendant Nwachukwu continue to refuse the ISRM interview and remediation process. **Ex. I**.

68. On response, Defendant Nwachukwu's counsel asked for additional information about potential causes of action against Nwachukwu and evidence of stolen documents, which were provided.

69. Defendant Nwachukwu's refusal to participate in the ISRM interview and the supervised remediation process, despite multiple good faith requests, constitutes a direct violation of the Secrecy Agreement and exacerbates the risk of misuse of JGS Confidential Information.

### V.      Irreparable Harm to JGS

70. JGS will suffer immediate and irreparable harm unless Defendant Nwachukwu is enjoined from breaching the Secrecy Agreement.

15

71. Unless restrained, Defendant Nwachukwu will continue to impermissibly use or disclose JGS's Confidential Information for her own benefit and to the competitive disadvantage to JGS, causing ongoing irreparable harm.

72. JGS has invested substantial time, effort, and resources in developing and maintaining JGS Confidential Information, the value of which is being and will continue to be diminished by Defendant Nwachukwu's conduct.

73. Defendant Nwachukwu's actions constitute ongoing and inevitable breach of her legal duties and the Secrecy Agreement, including the obligation not to use, disclose, or retain JGS Confidential Information.

74. JGS lacks an adequate remedy at law to prevent the continued misappropriation and disclosure of its Confidential Information. As acknowledged by Defendant Nwachukwu, any violation of the restrictive covenants in the Secrecy Agreement irreparably harms JGS and would therefore entitle JGS to injunctive relief.

75. Permanent injunctive relief is therefore necessary to bar Defendant Nwachukwu from further violating her obligations under the Secrecy Agreement, including using or disclosing JGS Confidential Information, and to preserve JGS's competitive position.

76. Injunctive relief is necessary to restore the parties to *status quo ante,* and the balance of equities strongly favors JGS.

77. JGS is also entitled to monetary damages, including compensatory damages and attorneys' fees, and costs.

78. Defendant Nwachukwu's willful, deliberate, and malicious breaches of the Secrecy Agreement further warrant punitive damages.

16

## COUNT I
### Breach of Contract (Secrecy Agreement)

79.     JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

80.     Defendant Nwachukwu knowingly and voluntarily entered into the Secrecy Agreement with JGS, which required her to maintain the confidentiality of JGS Confidential Information during and after employment, and to return all JGS Confidential Information upon termination.

81.     The Secrecy Agreement is a valid, binding, and enforceable contract, supported by adequate legal consideration.

82.     JGS fully performed its obligations under the Secrecy Agreement.

83.     Defendant Nwachukwu breached the Secrecy Agreement by downloading, retaining, and failing to return JGS's Confidential Information, including over 7,000 JGS documents, many of which were outside the scope of her responsibilities.

84.     As a direct and proximate result of Defendant Nwachukwu's breaches, JGS has suffered irreparable injury, and will continue to suffer irreparable injury for which there is no adequate remedy at law.

85.     JGS is therefore entitled to damages, costs, and attorneys' fees, and to permanent injunctive relief to prevent further breaches of the Secrecy Agreement.

## COUNT II
### Violations of Defend Trade Secrets Act,
### 18 U.S.C. § 1836, *et seq.*

86.     JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

17

87.     JGS possesses valuable trade secrets within the meaning of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq*., including, but not limited to, confidential clinical, research, operational, strategic, and marketing information relating to its products, therapeutic areas, and business plans, which derive independent economic value from not being generally known or readily ascertainable by competitors, and which have been subject to reasonable efforts to maintain secrecy.

88.     JGS has invested substantial time and money in developing these trade secrets and has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements such as those within the Secrecy Agreement.

89.     Defendant Nwachukwu misappropriated JGS trade secrets by downloading over 7,000 JGS documents to her personal computing device, including more than 500 documents while on a leave of absence, during which she was not authorized to access JGS systems, and more than 700 documents after tendering her resignation, and by taking affirmative steps to conceal her misconduct, including deleting files and emptying recycling bins.

90.     Defendant Nwachukwu's misappropriation was undertaken knowingly and willfully with the intent to benefit herself and/or JGS's competitors, including Cynthera Precision Intelligence™ and Summit Therapeutics Inc.

91.     As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

92.     JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS

18

Confidential Information, including its trade secrets. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees under 18 U.S.C. § 1836(b)(3).

## COUNT III
### Violations of New Jersey Trade Secrets Act,
### N.J.S.A. 56:15-1, *et seq.*

93.     JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

94.     JGS possesses valuable trade secrets within the meaning of New Jersey Trade Secrets Act, N.J.S.A. 56:15-1, *et seq*. including, but not limited to, confidential clinical, research, operational, strategic, and marketing information relating to its products, therapeutic areas, and business plans, which derive independent economic value from not being generally known or readily ascertainable by competitors, and which have been subject to reasonable efforts to maintain secrecy.

95.     JGS has invested substantial time and money in developing these trade secrets and has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements such as those within the Secrecy Agreement.

96.     Defendant Nwachukwu misappropriated JGS trade secrets by downloading over 7,000 JGS documents to her personal computing device, including more than 500 documents while on a leave of absence, during which she was not authorized to access JGS systems, and more than 700 documents after tendering her resignation, and by taking affirmative steps to conceal her misconduct, including deleting files and emptying recycling bins.

97.     Defendant Nwachukwu's misappropriation was undertaken knowingly and willfully with the intent to benefit herself and/or JGS's competitors, including Cynthera Precision Intelligence™ and Summit Therapeutics Inc.

98.     As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

99.     JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information, including its trade secrets. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

## COUNT IV
## Violations of the Computer Fraud and Abuse Act
## 18 U.S.C. § 1030, *et seq.*

100.    JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

101.    JGS has invested substantial time and money in developing these trade secrets and has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements such as those within the Secrecy Agreement.

102.    Defendant Nwachukwu knowingly and intentionally accessed JGS's protected computer systems without authorization and exceeded authorized access by downloading thousands of JGS documents to her personal computing device, including more than 500 documents while on a leave of absence, during which she was not authorized to access JGS systems, and more than 700 documents after tendering her resignation.

20

103.    Defendant Nwachukwu obtained JGS Confidential Information with intent to defraud and for the purpose of misappropriating JGS's Trade Secrets, in violation of 18 U.S.C. § 1030(a)(2) and (a)(4).

104.    As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

105.    JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

## COUNT V
## Violations of the New Jersey Computer-Related Offenses Act
## N.J.S.A. § 2A:38A-3 *et seq.*

106.    JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

107.    JGS has invested substantial time and money in developing these trade secrets and has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements such as those within the Secrecy Agreement.

108.    Defendant Nwachukwu knowingly and intentionally accessed JGS's protected computer systems without authorization and exceeded authorized access by downloading thousands of JGS documents to her personal computing device, including more than 500

21

documents while on a leave of absence, during which she was not authorized to access JGS systems, and more than 700 documents after tendering her resignation.

109. As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

110. JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

## COUNT VI
### Violations of the Stored Communications Act
### 18 U.S.C. § 2701 *et seq.*

111. JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

112. JGS has invested substantial time and money in developing these trade secrets and has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets. Such efforts include, among other things, requiring employees to enter into confidentiality, non-disclosure, and restrictive covenant agreements such as those within the Secrecy Agreement.

113. Defendant Nwachukwu knowingly and intentionally accessed JGS's protected computer systems without authorization and exceeded authorized access by downloading thousands of JGS documents to her personal computing device, including more than 500 documents while on a leave of absence, during which she was not authorized to access JGS systems, and more than 700 documents after tendering her resignation.

22

114. Defendant Nwachukwu knowingly and intentionally accessed electronic communications stored on JGS's systems without authorization, 18 U.S.C. § 2701.

115. As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

116. As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm for which it has no adequate remedy at law, including loss of trade secrets, potential disclosure to a competitor, and competitive disadvantage.

117. JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

## COUNT VII
### (Conversion)

118. JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

119. JGS is the owner of the JGS Confidential Information.

120. Defendant Nwachukwu wrongfully acquired and retained JGS Confidential Information, intentionally interfering with JGS's property rights.

121. As a result of Defendant Nwachukwu's actions, JGS has suffered and will continue to suffer immediate and irreparable harm.

122. JGS is therefore entitled to damages, costs, and attorneys' fees.

## COUNT VIII
### Unfair Competition

123.    JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

124.    Cynthera Precision Intelligence™ is a potential competitor of JGS.

125.    Summit Therapeutics Inc. is a direct competitor of JGS.

126.    Defendant Nwachukwu's conduct, as set forth herein, constitutes unfair competition, including misappropriation of JGS Confidential Information and breach of the Secrecy Agreement.

127.    Defendant Nwachukwu's conduct has conferred, and continues to confer, an unfair commercial advantage upon herself, Cynthera Precision Intelligence™, and Summit Therapeutics Inc., and poses a direct and ongoing threat to JGS's proprietary business strategies and competitive standing.

128.    JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

## COUNT IX
### Breach of Fiduciary Duty/Duty of Loyalty

129.    JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

130.    By virtue of her position as an Associate Director, Global Medical Affairs Execution, Defendant Nwachukwu owed JGS fiduciary duties of loyalty, trust, and confidence

24

including the duty to act in the best interest of JGS and not to engage in conduct that would harm JGS or confer an improper benefit on herself or a third party.

131. Defendant Nwachukwu knowingly and willfully breached these duties by misappropriating JGS's confidential, proprietary, and trade secret information, including downloading over 7,000 JGS documents to her personal computing device, many of which were outside the scope of her responsibilities.

132. Defendant Nwachukwu further took affirmative steps to conceal her misappropriation, including deleting records and files from her personal account and immediately and immediately emptying the recycle bin to obscure evidence of her unauthorized downloads.

133. As a direct and proximate result of Defendant Nwachukwu's unlawful actions, JGS has suffered irreparable injury, and will continue to suffer irreparable injury for which there is no adequate remedy at law.

134. JGS is therefore entitled to permanent injunctive relief barring Defendant Nwachukwu from further breaches of the Secrecy Agreement, including using or disclosing JGS Confidential Information. JGS is also entitled to recover actual damages, punitive damages, and attorneys' fees.

### COUNT X
### Unjust Enrichment

135. JGS hereby repeats and incorporates by reference as if fully set forth herein the allegations contained in the preceding Paragraphs.

136. Defendant Nwachukwu has unjustly benefited from the unauthorized use and retention of JGS Confidential Information for personal and commercial gain, including, upon information and belief, through the actual and/or potential competitive advantages obtained in

25

connection with her operation of Cynthera Precision Intelligence™ and her employment with Summit Therapeutics Inc.

137.    JGS is therefore entitled to disgorgement of any benefits received, attorneys' fees and costs.

**REQUESTS FOR RELIEF**

**WHEREFORE**, JGS respectfully requests that the Court enter judgment in its favor and grant the following relief against Defendant Nwachukwu:

1. **Permanent Injunctive Relief:**

   a. Enjoining Defendant Nwachukwu from using, disclosing, or retaining any JGS Confidential Information, Trade Secrets, or Proprietary Information;

   b. Enjoining Defendant Nwachukwu from using such information in connection with Cynthera Precision Intelligence™, Summit Therapeutics Inc., or any other competitive business;

   c. Compelling Defendant Nwachukwu to return, or certify the destruction of, all JGS property, documents, and electronic files containing JGS Confidential Information;

2. **Compensatory Damages:**

   Awarding JGS actual and consequential damages resulting from Defendant Nwachukwu's misappropriation, conversion, and breach of her Secrecy Agreement, including loss of competitive advantage and value of proprietary information;

3. **Punitive Damages:**

   Awarding punitive damages for Defendant Nwachukwu's willful, fraudulent, and malicious conduct, including concealment and deletion of files, and misrepresentation regarding possession of JGS Confidential Information;

26

4. **Disgorgement and Unjust Enrichment:**

Requiring Defendant Nwachukwu to disgorge any benefit obtained through unauthorized use or retention of JGS Confidential Information.

5. **Attorneys' Fees and Costs:**

Awarding JGS its attorneys' fees and costs incurred in connection with this action, pursuant to applicable federal and state statutes;

6. **Pre- and Post-Judgment Interest:**

Awarding JGS interest as allowed by law;

7. **Declaratory Relief:**

Declaring that Defendant Nwachukwu's actions constitute breaches of her Secrecy Agreement, violations of trade secret laws, and other wrongful conduct;

8. **Such Other and Further Relief:**

Granting JGS any other relief the Court deems just and proper to protect its rights, trade secrets, and proprietary information.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Plaintiff*
*Janssen Global Services, LLC*

/s/ *Harris S. Freier*
Harris S. Freier, Esq.
Latiqua M. Liles, Esq.
10 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel: (973) 656-1600
harris.freier@ogletreedeakins.com
latiqua.liles@ogletreedeakins.com

Dated: March 12, 2026

## <u>CERTIFICATION PURSUANT TO L.CIV.R. 11.2</u>

The undersigned certifies and declares that the matter in controversy is not the subject of any other action pending in any other Court, or of any pending arbitration or administrative proceeding contemplated by Plaintiff at this time.

<u>*/s/ Harris S. Freier*</u>
Harris S. Freier, Esq.

Dated: March 12, 2026

28